UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

QUINCY JOSEPH                           CIVIL ACTION NO. 6:10-cv-01315

VERSUS                                  JUDGE DOHERTY

MICHAEL J. ASTRUE,                      MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL
SECURITY

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and remanded.

## BACKGROUND

On October 1, 2008, the claimant, Quincy Joseph, applied for Supplemental

Security Income benefits,[1] claiming that he became disabled on January 20, 2005.  In

a contemporaneous disability report, he claimed that he is unable to work because he

suffers with diabetes and seizures.[2]   A determination was made that he is not

---

[1]      Rec. Doc. 8-6 at 2.

[2]      Rec. Doc. 8-7 at 7.

disabled.[3]  Mr. Joseph requested a hearing, which was held on October 2, 2009 before Administrative Law Judge ("ALJ") Carey Jobe.[4]

Mr. Joseph was born on April 1, 1977,[5] and currently is 34 years old.  He was a special education student and dropped out of school after finishing the ninth grade.[6] He has worked as a barber, as a janitor at a machine shop, and as a stocker at Wal-Mart.[7]  He has had insulin-dependent Type I diabetes since approximately age seven and has had a seizure disorder since approximately age sixteen or seventeen.[8]

The record contains medical records for Mr. Joseph from Dr. Victor Jackson of Iberia Comprehensive Community Health Center, covering the time period from September 2007 to August 2009.

On September 27, 2007,[9] Dr. Jackson's notes confirmed that Mr. Joseph has both a seizure disorder and Type I diabetes.  Mr. Joseph told Dr. Jackson that he had had one seizure since his last doctor's visit.  The date of the prior visit is unknown.

---

[3]     Rec. Doc. 8-4 at 2.

[4]     The hearing transcript is found in the record at Rec. Doc. 8-3 at 16-38.

[5]     Rec. Doc. 8-3 at 19.

[6]     Rec. Doc. 5-3 at 29.

[7]     Rec. Doc. 8-3 at 22-24.

[8]     Rec. Doc. 8-3 at 22.

[9]     Rec. Doc. 8-8 at 13.

Dr. Jackson referred to it as a "breakthrough seizure."  A breakthrough seizure is one that occurs despite the use of anticonvulsant medications that have otherwise successfully prevented seizures in the patient.[10]  At that visit, Lyrica was added to Mr. Joseph's medications.

On October 15, 2007,[11] Mr. Joseph primarily saw Dr. Jackson with regard to a non-seizure-related fall that resulted in an emergency room visit for a rib fracture. Dr. Jackson's notes also indicate that Mr. Joseph reported missing doses of his medication.  Although Dr. Jackson does not indicate which medication was not taken as prescribed, he wrote that Mr. Joseph "must have better compliance [with] Tegretol rather than increasing Tegretol dose."  Tegretol is an anticonvulsant medication prescribed for the prevention of seizures.[12]  Therefore, it is logical to conclude that Mr. Joseph had not previously been fully compliant with Tegretol.   At that appointment, Dr. Jackson increased Mr. Joseph's Lyrica prescription.  Dr. Jackson's notes from that appointment contain no reference to the number or frequency of Mr. Joseph's seizures.

---

[10]     See, e.g., Breakthrough Seizue, http://en.wikipedia.org./wiki/Breakthrough_seizure (last visited Jan. 19, 2012); Diastat AcuDial, http://www.diastat.com/6-Resources/21-Epilepsy_Seizures.html (last visited Jan. 19, 2012).

[11]     Rec. Doc. 8-8 at 12.

[12]     U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000620/ (last visited Jan. 19, 2012).

Mr. Joseph next saw Dr. Jackson on November 12, 2007.[13]  Again, both his diabetes and his seizure disorder are addressed in Dr. Jackson's notes as well as his recovery from the fall, but there is no reference to the number or frequency of Mr. Joseph's seizures.

On January 7, 2008,[14] Mr. Joseph returned to Dr. Jackson's office.  The doctor's notes indicate that Mr. Joseph had not had a seizure since Lyrica was added to his medication regimen.  Lyrica was added at the office visit of September 27, 2007.  Thus, a period of approximately four months elapsed without a seizure.  Dr. Jackson wrote that Mr. Joseph's seizure disorder was "markedly improved [with] Lyrica."

On Mr. Joseph's next visit to Dr. Jackson's office, April 16, 2008,[15] however, Dr. Jackson noted that Mr. Joseph had had two seizures since his last office visit, and he described Mr. Joseph as having an "uncontrolled" seizure disorder.  At that visit, Dr. Jackson also indicated that he was referring Mr. Joseph to an endocrinologist, presumably for his diabetes.  He noted that Mr. Joseph had "chronically poor diabetic control" and was a candidate for an insulin pump.

---

[13]     Rec. Doc. 8-8 at 11.

[14]     Rec. Doc. 8-8 at 10.

[15]     Rec. Doc. 8-8 at 9.

On July 7, 2008,[16] Mr. Joseph again saw Dr. Jackson.  At that time, Dr. Jackson indicated that Mr. Joseph had had no seizures for three months and was taking his medications.  He also noted that, with regard to the diabetes, Mr. Joseph had "poor control (medication failure)."  His plan was to send Mr. Joseph to a diabetic educator. He reiterated that Mr. Joseph is a candidate for an insulin pump.

At Mr. Joseph's next visit, on August 4, 2008,[17] Dr. Jackson noted that Mr. Joseph had had no seizures for ten months.  Changes were made to his diabetes medications.

At the next office visit, on September 5, 2008,[18] Mr. Joseph's seizure disorder is mentioned but there is no statement regarding the number or frequency of his seizures.  His diabetes was also mentioned, and Dr. Jackson was treating him for a whiplash injury received in a motor vehicle accident.

On October 17, 2008,[19] Dr. Jackson noted that Mr. Joseph was experiencing "persistent breakthrough" and "breakthrough [with] therapeutic Tegretol level."  Dr.

---

[16]     Rec. Doc. 8-8 at 8.

[17]     Rec. Doc. 8-8 at 7.

[18]     Rec. Doc. 8-8 at 6.

[19]     Rec. Doc. 8-8 at 49.

Jackson prescribed Keppra, another anticonvulsant medication.[20]  Dr. Jackson also described Mr. Joseph's diabetes as "uncontrolled."

Mr. Joseph next saw Dr. Jackson on January 30, 2009,and reported that his last seizure had occurred one week earlier.[21]  The diagnoses listed were seizure disorder and Type I diabetes mellitus with complication.  The nature and severity of the complications from diabetes were not explained.

The next office visit was on March 30, 2009,[22] and Mr. Joseph was primarily being treated for a neck abscess.  Dr. Jackson's notes make no mention of the number or frequency of Mr. Jackson's seizures.  It was noted, however, that he suffers from "poorly controlled diabetes."

On May 28, 2009, Mr. Joseph reported to Dr. Jackson that he was having approximately one seizure per month.[23]  Again, Dr. Jackson's diagnoses were Type I diabetes mellitus with complication and seizure disorder.  Again, Dr. Jackson did not elaborate on the nature or severity of the diabetes complications.

---

[20]     U.S. National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001067/ (last visited Jan. 19, 2012).

[21]     Rec. Doc. 8-8 at 41.

[22]     Rec. Doc. 8-8 at 43.

[23]     Rec. Doc. 8-8 at 44.

On November 18, 2008, Mr. Joseph was examined by Dr. Kenneth A. Ritter, a consulting internist.[24]   Dr. Ritter reported that Mr. Joseph told him his chief complaints are diabetes and a seizure disorder, with his last seizure having been one month earlier.   Dr. Ritter found Mr. Joseph's extremities to be normal.   His impressions were insulin dependent Type I diabetes mellitus "under chronically poor control according to the medical records," history of a seizure disorder, and "chronic poor compliance with his medications."   Dr. Ritter indicated that his impression concerning poor compliance with medications "was taken directly from the medical records."   Although Dr. Ritter states that he reviewed "helpful medical records sent to me with this exam request," he does not detail the nature or source of the records.

Dr. Ritter also completed a medical assessment of ability to do work-related activities (physical) and concluded that Mr. Joseph has no limitations except that he should avoid dangerous heights and should not work near dangerous open machinery.[25]

On October 2, 2009, Mr. Joseph appeared for a hearing before ALJ Jobe without representation.[26]   He testified that "I get seizures a lot and my diabetes is

---

[24]     Rec. Doc. 8-8 at 22-26 (Dr. Ritter's report).

[25]     Rec. Doc. 8-8 at 26.

[26]     Rec. Doc. 8-3 at 18-19.

uncontrollable."[27]  He stated that he has seizures "at least twice a month."[28]  He also stated that he was taking 400 milligrams of Tegretol twice a day for the seizures.[29] He testified that he never misses his medication but continues to have seizures.[30]  Mr. Joseph testified that he cannot drive because of his seizure disorder, and in fact once had a seizure while driving.[31]  He lost his job as a barber because of his seizure disorder.[32] He spends most days with his father because his family does not want him to stay alone while his wife works.[33]

Mr. Joseph also testified regarding his diabetes.  He stated that it causes his feet and legs to swell so that sometimes – such as the day of the hearing – he must wear slippers instead of other shoes.[34]  He has pain in his legs and sometimes has blurry

---

[27]     Rec. Doc. 8-3 at 21.

[28]     Rec. Doc. 8-3 at 24.

[29]     Rec. Doc. 8-3 at 25.

[30]     Rec. Doc. 8-3 at 26.

[31]     Rec. Doc. 8-3 at 28.

[32]     Rec. Doc. 8-3 at 22.

[33]     Rec. Doc. 8-3 at 28.

[34]     Rec. Doc. 8-3 at 27.

vision.[35]  He explained that he takes insulin twice a day as well as additional medication for the diabetes.[36]

An unfavorable decision was rendered on October 30, 2009.[37]  Mr. Joseph requested review by the Appeals Council, but the Appeals Council denied his request.[38]  This appeal was filed on August 19, 2010.[39]

## ASSIGNMENT OF ERRORS

Mr. Joseph contends that the record as a whole does not support the Commissioner's decision that he is not disabled.  He argues that the ALJ erred in finding that his seizure disorder does not satisfy the listing for epilepsy and in finding that he was not compliant with his medications.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper

---

[35]    Rec. Doc. 8-3 at 27.

[36]    Rec. Doc. 8-3 at 27.

[37]    Rec. Doc. 8-3 at 11-15.

[38]    Rec. Doc. 8-3 at 2.

[39]    Rec. Doc. 1.

legal standards were applied in reaching the decision.[40]   If the Commissioner's

findings are supported by substantial evidence, they must be affirmed.[41]   Substantial

evidence is more than a mere scintilla and less than a preponderance.[42]   A finding of

no substantial evidence is appropriate only if no credible evidentiary choices or

medical findings support the decision.[43]   Finding substantial evidence requires

scrutiny of the entire record as a whole.[44]   In applying this standard, the court may not

re-weigh the evidence or substitute its judgment for that of the Commissioner.[45]

### DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that

he or she is disabled.[46]   Disability is defined in the Social Security regulations as the

"inability to engage in any substantial gainful activity by reason of any medically

---

[40]      *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417
(5th Cir. 2000).

[41]      *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[42]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[43]      *Boyd v. Apfel,* 239 F.3d at 704.

[44]      *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[45]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[46]      *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954
F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*,
810 F.2d 1296, 1301 (5th Cir. 1987).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[47]   Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[48]

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.  An individual who does not have a severe impairment will not be found disabled.

3.  An individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors.

4.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made.

5.  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and

---

[47]    42 U.S.C. § 423(d)(1)(A).

[48]    20 C.F.R. § 404.1572(a)-(b).

residual functional capacity must be considered to determine if the claimant can perform any other work.[49]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[50] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[51]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[52]

The claimant bears the burden of proof on the first four steps.[53]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[54]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by

---

[49]     *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[50]     20 C.F.R. § 404.1520(a)(4).

[51]     20 C.F.R. § 404.1545(a)(1).

[52]     20 C.F.R. § 404.1520(e).

[53]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[54]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

expert vocational testimony, or by other similar evidence.[55]  If the Commissioner

makes the necessary showing at step five, the burden shifts back to the claimant to

rebut this finding.[56]  If the Commissioner determines that the claimant is disabled or

not disabled at any step, the analysis ends.[57]

In this case, the Commissioner found, at step one, that Mr. Joseph has not

engaged in substantial gainful activity since September 22, 2008, the date on which

he applied for SSI.[58]  That finding is supported by evidence in the record.  At step

two, the ALJ found that Mr. Joseph has two severe impairments:  seizure disorder and

diabetes mellitus.[59]  This is also supported by evidence in the record.  At step three,

the ALJ found that Mr. Joseph does not have an impairment or a combination of

impairments that meets or medically equals one of the listed impairments.[60]  The ALJ

did not explain the basis for this finding.  The ALJ then found that Mr. Joseph has the

residual functional capacity to perform a full range of work at all exertional levels but

---

[55]     *Fraga v. Bowen*, 810 F.2d at 1304.

[56]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[57]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[58]     Rec. Doc. 8-3 at 13.

[59]     Rec. Doc. 8-3 at 13.

[60]     Rec. Doc. 8-3 at 13.

with nonexertional limitations requiring that he not work at heights or around moving machinery.[61]  At step four, the ALJ found that Mr. Joseph is able to perform his past relevant work.[62]  At step five, the ALJ found that there are jobs, existing in significant numbers in the national economy, that Mr. Joseph can perform.[63]  Therefore, the ALJ found that Mr. Joseph is not disabled.

Mr. Joseph argues that the ALJ erred in finding that Mr. Joseph is not compliant with his seizure medication and that his seizure disorder does not satisfy the listing for epilepsy.

## A.    THE ALJ ERRED IN FAILING TO EVALUATE THE RELEVANT LISTINGS AT STEP 3.

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision.  The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and

---

[61]     Rec. Doc. 8-3 at 13.

[62]     Rec. Doc. 5-3 at 19.

[63]     Rec. Doc. 5-3 at 19.

work history.[64]  The ALJ always has a duty to fully and fairly develop the facts relating to a claim for disability benefits,[65] and when a Social Security claimant is not represented by counsel, the ALJ is under a heightened duty to scrupulously and conscientiously explore all relevant facts.[66]  In this case, Mr. Joseph was not represented by counsel at the hearing.  Therefore, the ALJ's burden was intensified. When the ALJ does not satisfy this duty, the resulting decision is not substantially justified.[67]

At the hearing, Mr. Joseph described his seizures.[68]  He said that he loses consciousness, falls down, and bites his tongue.  Because he falls, he sometimes hits his head.  He has no memory of anything that happens during the seizure.  He estimates that they last about half a minute, although he has sometimes had more than one seizure back to back.  After the seizure, his muscles hurt and he is very tired.  He has had seizures during the day and also at night.  He also stated that he has seizures approximately twice a week and takes Tegretol in an attempt to prevent them.  He

---

[64]    See *Martinez v. Chater*, 64 F.3d at 174, citing *Wren v. Sullivan*, 925 F.2d at 126.

[65]    See *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); *Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)

[66]    *Castillo v. Barnhart*, 325 F.3d at 552-53; *Brock v. Chater*, 84 F.3d at 728.

[67]    *Ripley v. Chater*, 67 F.3d at 557.

[68]    Rec. Doc. 8-3 at 24-25.

testified that he never misses a dose of his medication but continues to have seizures.[69]  Mr. Joseph's treating physician described his seizures as "breakthrough seizures."

At the hearing, Mr. Joseph also described his diabetes.[70]  He testified that his blood sugar numbers go up and down, his legs swell and hurt, and his eyesight gets blurry.  Mr. Joseph's treating physician described his diabetes as "uncontrolled" and "with complication."

Viewed as a whole, this evidence at least suggests that Mr. Joseph may meet the requirements of Listing 11.02 – grand mal seizures occurring more than once a month despite at least three months of prescribed treatment, with daytime episodes involving loss of consciousness.[71]  This evidence also suggests that Mr. Joseph may meet the listing for diabetes – Listing 9(A)(5) (formerly Listing 9.08) – depending upon the type of complications caused by his uncontrolled diabetes.

An ALJ has a duty to analyze a claimant's impairments under every applicable listing,[72] yet in this case the ALJ did not mention either relevant listing or explain

---

[69]     Rec. Doc. 8-3 at 26.

[70]     Rec. Doc. 8-3 at 27.

[71]     See 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 11.02.

[72]     See, e.g. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

why Mr. Joseph does not meet those listings.  Under similar circumstances, the Fifth

Circuit said:

> The ALJ did not identify the listed impairment for which
> [the claimant's] symptoms fail to qualify, nor did she
> provide any explanation as to how she reached the
> conclusion that [the claimant's] symptoms are insufficiently
> severe to meet any listed impairment.  "Such a bare
> conclusion is beyond meaningful judicial review."[73]

The ALJ found that Mr. Joseph's diabetes and seizure disorder are severe

impairments, but he did not discuss how or why Mr. Joseph's conditions did or did

not satisfy the listings for those two illnesses.  The undersigned is unable to determine

whether the Commissioner's conclusion at step three is or is not based on substantial

evidence.  The ALJ's failure to discuss the relevant listings or to explain why Mr.

Joseph's symptoms fail to satisfy the criteria set forth in the listing is legal error that

requires reversal and remand of the Commissioner's decision.[74]  Therefore, the

undersigned recommends that this matter be remanded for a thorough analysis of

---

[73]     *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

[74]     See, e.g., *Lynch v. Astrue*, No. 7–10–CV–0032–BD, 2011 WL 1542056 at *3–4 (N.D.Tex. Apr. 22, 2011) (remand required where ALJ failed to reference potentially applicable Listing and did not discuss all relevant evidence in the context of the listing); *Bowman v. Astrue*, No. 1–09–CV–137, 2011 WL 744767 at *18 (N.D.W.Va. Jan.27, 2011), rec. adopted by, 2011 WL 736806 (N.D.W.Va. Feb.23, 2011) (disability determination was not supported by substantial evidence where ALJ failed to compare criteria of Listing 11.02 and 11.03 to evidence of plaintiff's severe seizure impairment); *Miller v. Commissioner of Social Sec.*, 181 F.Supp.2d 816, 820 (S.D.Ohio 2001) (remand required where ALJ found that plaintiff's epilepsy was a severe impairment, but failed to consider Listing 11.03).

whether Mr. Joseph has an impairment or combination of impairments that meets or medically equals one of the listed impairments following a full and complete development of the record.

## B.  THE ALJ ERRED IN FINDING THAT MR. JOSEPH IS NONCOMPLIANT WITH HIS MEDICATIONS.

A condition that is controlled by medication cannot be a basis for a finding of disability.[75]  Similarly, it is well established that failure to follow prescribed medical treatment precludes an award of benefits.[76]

In this case, the ALJ concluded that Mr. Joseph was not compliant with his medication on the basis of the ALJ's personal interpretation of certain laboratory results and on the basis of a similar conclusion by consulting physician, Dr. Ritter that is not supported by the record.

In his report, Dr. Ritter stated that Mr. Joseph had "chronic poor compliance with his medications" and further stated that this conclusion "was taken directly from the medical records."  Dr. Ritter stated that he reviewed "helpful medical records sent to me with this exam request," but he did not list the nature or source of the records.

---

[75]    See *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

[76]    20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

More important, no such medical records are contained in the record.  If Dr. Ritter's conclusion was in fact supported by medical records that he reviewed, those records were not submitted for review by the ALJ or for review by this Court, and the ALJ did not fully develop the record.

The record contains one reference by Dr. Jackson, on October 15, 2007, that Mr. Joseph needed better compliance with his Tegretol.  That one sentence falls far short of establishing "chronic poor compliance."  Accordingly, Dr. Ritter's conclusion is not supported by factual evidence in the record.

The ALJ also relied upon his own interpretation of certain of Mr. Joseph's laboratory reports, noting that his "Tegretol levels have been found to be sub-therapeutic on several occasions" then citing to two – not several – pages in the record.[77]  In fact, however, the record contains no corroboration of the ALJ's interpretation of Mr. Joseph's laboratory reports.  The two pages the ALJ referred to are laboratory reports that indicate Mr. Joseph had a detectable but sub-therapeutic Tegretol level in his blood stream.[78]  As noted previously, Dr. Jackson's records contain only one reference to a lack of compliance with Tegretol and also indicates that Mr. Joseph was having seizures even **with** a therapeutic amount of Tegretol.

---

[77]    Rec. Doc. 8-3 at 14.

[78]    Rec. Doc. 8-8 at 20, 48.

The medical evidence contained in the record does not address why Mr. Joseph's blood levels revealed sub-therapeutic levels of anti-seizure medication at the two times noted by the ALJ.  Nor did the ALJ discuss the reasons why Mr. Joseph's blood levels might be low or consider the significance of that evidence.  When medication therapy appears to be inadequate, the ALJ should examine whether the inadequacy is caused by idiosyncrasy in absorption or metabolism of the drug.[79] "When the reported blood drug levels are low . . . the information obtained from the treating source should include the physician's statement as to why the levels are low and the results of any relevant diagnostic studies concerning the blood levels."[80] Here, instead of fully developing the record by requesting such information from Mr. Joseph's treating physician, the ALJ jumped to the conclusion that Mr. Joseph was noncompliant with his medication regimen.  At a minimum, the laboratory results should have caused the ALJ to further develop the record.  Similarly, Dr. Jackson's notation that Mr. Joseph has uncontrolled diabetes with complication should have caused the ALJ to further develop the record with regard to the nature and severity of the complications.

---

[79]    See 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 11.00(A).

[80]    20 C.F.R. Pt. 404, Subpt. P., App. 1, § 11.00(A).

An ALJ should not "play doctor" and substitute his own evaluation of the evidence for that of the physicians who actually treated the claimant.[81]   The Fifth Circuit has cautioned ALJs not to succumb to the temptation to play doctor because common sense can mislead and lay intuition about medical phenomena are often wrong.[82]

In this case, Dr. Jackson – the treating physician – described Mr. Joseph's seizures as "breakthrough seizures."   By definition, these are seizures that occur despite the patient's taking anti-seizure medication.   The ALJ improperly discounted Dr. Jackson's opinion and seems to ignore the possibility that, despite an improvement immediately following the prescription of Lyrica in September 2007, Mr. Joseph may have begun having more frequent seizures by October 2009 when the hearing was held.

Furthermore, "[t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."[83]   In this case, the treating physician diagnosed Mr. Joseph with breakthrough seizures, while the consultative physician's opinion that Mr.

---

[81]   *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003), citing *Schmidt v. Sullivan*, 914 F.2d 117, 188 (7th Cir. 1990).

[82]   *Frank v. Barnhart*, 326 F.3d at 622.

[83]   *Newton v. Apfel*, 209 F.3d at 455.

Joseph was not compliant with his medication has no valid factual basis. Accordingly, it is Dr. Ritter's opinion that should have been discounted, not Dr. Jackson's.

For these reasons, the ALJ erred in concluding that Mr. Joseph was noncompliant with his seizure medication.  That conclusion lacks a valid factual basis, and the Commissioner's decision that Mr. Joseph is disabled was not supported by substantial evidence.  Accordingly, it is recommended that the decision be reversed and remanded for a more thorough development of the record and further consideration of whether Mr. Joseph is or is not disabled.

## CONCLUSION AND RECOMMENDATION

For the reasons explained above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be REVERSED and REMANDED for further consideration in accordance with the foregoing discussion following a full and complete development of the record with regard to all of the impairments found by the Commissioner to be severe.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of

this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 23rd day of January 2012.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)